Ronnie NEWMAN, Appellant,

v.

Paul and Susan OBERSTELLER, as Next Friend of Kurt Obersteller, Appellees.

No. 13–95–034–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 25, 1996.

Rehearing Overruled Feb. 22, 1996.

William S. Helfand, Hirsch, Robinson, Sheiness & Glover, Houston, Lisa Bingham, Hirsch, Robinson, Sheiness & Glover, Houston, for appellant.

William J. Kelly, Corpus Christi, for appellees.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Kurt Obersteller, a Flour Bluff High School student, and his parents, filed suit against the Flour Bluff Independent School District (FBISD) and Ronnie Newman, Head Coach and Athletic Director for the FBISD.

The original petition asserted tort claims based on state law as well as federal claims based on 42 U.S.C. § 1983. The case was removed to federal court which issued final judgment in favor of defendants on the federal claims but declined to exercise supplemental jurisdiction over the state law tort claims. Those claims were remanded to state court. Summary judgments were granted by the state court in favor of Coach Newman and FBISD. However, pursuant to plaintiffs' motion to reconsider, the trial court subsequently vacated the summary judgment granted in favor of Coach Newman.

Coach Newman then filed his first interlocutory appeal, which was ostensibly permissible because it involved the defense of official immunity, yet premature because it was an appeal of the trial court's order granting plaintiffs' motion to reconsider rather than a denial of a motion for summary judgment as permitted by section 51.014(5) of the Texas Civil Practice and Remedies Code.[1] Coach

---

1. Section 51.014(5) provides that a person may appeal from an interlocutory order of a district court that denies a summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state.

Newman's motion to abate this premature appeal was granted by this court. He then filed his second motion for summary judgment which was denied and is now on appeal.

## ACCELERATED APPEAL AND MOTIONS FOR EXTENSION OF TIME

■ As a preliminary issue, we first address the Obersteller's objections and challenges to our jurisdiction concerning Coach Newman's interlocutory appeal. Following the perfection of Coach Newman's premature appeal, we granted two motions for extensions of time to file his brief. The Oberstellers contend that this court was without jurisdiction to grant the extensions of time because the appeal was interlocutory and thus an accelerated appeal. *City of Beverly Hills v. Guevara*, 886 S.W.2d 833, 835 (Tex. App.—Waco 1994), *rev'd on other grounds*, 904 S.W.2d 655 (Tex.1995) (per curiam). They argue that all appellate documents filed after the first motion to extend were filed late. We disagree.

Rule 58 of the Texas Rules of Appellate Procedure permits consideration of all documents submitted to this court. Rule 58 states:

(a) Proceedings relating to an appeal need not be considered ineffective because of prematurity if a subsequent appealable order has been signed to which the premature proceeding may properly be applied.

(b) If the appellate court finds that the appeal is premature because the order appealed from is not final, it may permit the defect to be cured and any subsequent proceedings to be shown in a supplemental record.

(c) In civil cases, if the trial court has signed an order modifying, correcting, or reforming the order appealed from, or has vacated that order and signed another, any proceedings relating to an appeal of the first order may be considered applicable to the second, but shall not prevent any party from appealing from the second order pursuant to Rule 329b(h) of the Texas Rules of Civil Procedure. The second order and any proceedings concerning it may be in-

cluded in either the original or a supplemental record.

Coach Newman's original appeal was premature and subject to dismissal for want of jurisdiction had it not been abated. The subsequent motion for summary judgment, which asserted an affirmative defense under section 101.106 of the Texas Civil Practice & Remedies Code and section 21.912 of the Texas Education Code, was then denied by the trial court and properly appealed to this court in accordance with section 51.014(5) of the Texas Civil Practice and Remedies Code. While we still must consider whether or not the immunity defenses actually meet the substantive exception laid out by section 51.014(5), we find that Coach Newman has met all the procedural requirements necessary to perfect an interlocutory appeal.

## IMMUNITY BASED ON TEX.CIV.PRAC. & REM.CODE § 101.106

■ By his first point of error, Coach Newman argues that the trial court erred in denying summary judgment following judgment in favor of his governmental employer pursuant to section 101.106 of the Texas Civil Practice & Remedies Code. Section 101.106 provides that

A judgment in an action or settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Tex.Civ.Prac. & Rem.Code Ann. § 101.106 (Vernon 1986).

Coach Newman argues that section 101.106 mandates dismissal of an action against an individual employee when a judgment has been rendered in an action against the governmental employer involving the same subject matter. *Gibson v. Spinks*, 895 S.W.2d 352, 355 (Tex.1995). While this argument is an accurate recitation of the law, we cannot consider it at this time.

Section 51.014(5) permits an appeal from an interlocutory order which denies summary judgment based on the assertion of immunity by an employee of a governmental unit. Coach Newman's section 101.106 defense

does not address immunity. This statute applies to limitations and bars. Neither the government employer nor the employee gains any immunity directly from section 101.106. We note that at least one court of appeals has referred to section 101.106 as a governmental employee's "automatic derivative immunity" (although not in the context of determining the propriety of a section 51.014(5) interlocutory appeal). *Davis v. Mathis*, 846 S.W.2d 84, 88 (Tex.App.—Dallas 1992, no writ). We disagree with the *Davis* court's interpretation of section 101.106 and maintain that it is not an immunity statute.

Since this is an interlocutory appeal based on section 51.014(5), we are without jurisdiction to consider Coach Newman's section 101.106 argument. TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(5) (Vernon 1986).

### IMMUNITY BASED ON TEX.EDUC.CODE § 21.912(B)

By his second point of error, Coach Newman asserts that the trial court erred in denying his motion for summary judgment because he is entitled to immunity pursuant to section 21.912(b) of the Texas Education Code. This point is properly before this court pursuant to section 51.014(5) of the Texas Civil Practice and Remedies Code. *See Fowler v. Szostek*, 905 S.W.2d 336, 340–41 (Tex.App.—Houston [1st Dist.] 1995, n.w.h.).

Summary judgment is proper when the movant shows by uncontroverted or conclusive summary judgment evidence that no issue of material fact exists and that he is entitled to judgment as a matter of law. In deciding whether a disputed material fact issue precludes summary judgment, a reviewing court will take as true all evidence favorable to the nonmovant and will indulge all reasonable inferences and resolve all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When a defendant moves for summary judgment, he must show that no genuine issue of fact exists as to one or more of the essential elements of the plaintiff's cause of action, *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.

1970), or that an affirmative defense is established as a matter of law. *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984) (*citing City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979)).

Coach Newman asserted the immunity defense provided in section 21.912(b) of the Texas Education Code, which states:

> No professional employee of any school district within this state shall be personally liable for any act *incident to or within the scope of the duties of his position of employment,* and which act involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX.EDUC.CODE ANN § 21.912(b),(c) (Vernon 1987) (emphasis added); *Pierson v. Houston Indep. Sch. Dist.*, 698 S.W.2d 377, 381 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Thus, Coach Newman had to conclusively establish that (1) he acted incident to or within the scope of his duties as Head Coach and Athletic Director, (2) his actions involved the exercise of judgment or discretion on his part, and (3) that the allegations alleged by the plaintiffs did not arise in circumstances where he used excessive force in the discipline of Kurt Obersteller or where he acted negligently such that Kurt suffered bodily injury.

Coach Newman sought to establish the elements of his defense through his affidavit and the supporting affidavit of FBISD Superintendent, Leroy DeHaven. Coach Newman's affidavit states, in relevant part, as follows:

> I have been the Head Coach and Athletic Director for [FBISD] for at least the last seven (7) years.... The job of coaching includes setting rules and standards; motivating students to comply with those standards and, disciplining students who refuse. This is all done within the highly aggressive and competitive context of high school athletics.
>
> ....

I specifically deny ever mistreating [Kurt]. I specifically deny ever directing another person to mistreat him. I specifically deny mistreating him because of anything his father did, said or believed.

. . . .

Furthermore, all of my interactions with Kurt Obersteller took place within the setting of high school athletics. Our relationship at all times was limited to that of coach-student. . . . Furthermore, all of my interactions with Kurt Obersteller were confined to motivating and guiding the student as an athletic competitor. None of my actions were intended to cause severe emotional distress. If any of my actions did result in such distress, it was due to a mistake in judgment in the manner in which I chose to motivate this student as an athletic competitor; or were misunderstood by the student.

. . . .

I have never used excessive force to discipline Kurt Obersteller. I never struck him or otherwise used my physical strength to discipline him. The discipline techniques I use include requiring extra running; directing a student to leave a game or practice; not allowing a student to play in a game; and decreasing a student's grade. These are considered to be moderate forms of discipline by a high school athletic coach.

Superintendent DeHaven's supporting affidavit states, in relevant part, that:

All of [the] . . . duties of a coach or athletic director involve the daily exercise of judgment and discretion in making decisions related to athletics and student athletes. Thus, an individual such as Ronnie Newman is given wide discretion in performance of his job. It is further expected that the Head Coach and Athletic Director in carrying out his or her responsibilities will rely upon their experience and utilize their sense and wisdom, and judgment when making decisions and when supervising/coaching students, and when interacting with those students, teachers, administrators and coaches.

■ While a summary judgment may be granted on affidavits from interested parties,

such affidavit evidence must be clear, positive, direct, credible, free from contradictions, and susceptible of being readily controverted. *Major Inv., Inc. v. De Castillo,* 673 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); TEX.R.CIV.P. 166–a.

■ The affidavits do not meet this test. We find that they contain conclusions seeking to establish that the elements of section 21.912(b) were met: Ronnie Newman was a professional school employee working within the scope of his duties, his job was one involving or requiring the exercise of judgment and discretion, and he did not physically discipline Kurt Obersteller at any time. These conclusions are not sufficient to support the granting of a summary judgment. *Crain v. Davis,* 417 S.W.2d 53, 55 (Tex.1967).

Coach Newman's affidavit, which states, among other things, that he was acting within the scope of his employment is, at best, a self-serving statement of his intention and belief. DeHaven's affidavit does not state whether the actions alleged by the Obersteller's were within Coach Newman's discretion; it simply states that Coach Newman has wide discretion in performing his duties and is expected to use good judgment when exercising that discretion. These statements, which amount to declarations of good faith and good intentions, are not readily controverted and are best left to the fact finder for determination. *De Castillo,* 673 S.W.2d at 279.

■ Furthermore, we find that the Obersteller's controverting affidavit and answers to interrogatories raise a fact issue. Affidavits filed by a nonmovant in opposition to summary judgment should be accepted as true, and every reasonable inference should be drawn in the nonmovant's favor. *See University of Tex. Health Science Ctr. v. Big Train Carpet,* 739 S.W.2d 792 (Tex.1987); *Nixon,* 690 S.W.2d at 548–49. If a movant establishes an affirmative defense which would bar the suit as a matter of law, then the nonmoving party must adduce summary judgment proof raising a fact issue in avoidance of that affirmative defense. *See Palmer v. Enserch Corp.,* 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.).

Kurt Obersteller's affidavit states, in relevant part:

While living in the Flour Bluff school district, I perceived that there were actions taken against me by Ronnie Newman, Michael Bourg, Rupert Wright and Bobby Jones. These actions included but were not limited to, the following acts: I was locked into a locker room against my will, I was constantly berated by members of the athletic department in a manner different than the way in which my teammates were treated, I was disciplined differently than other persons on the teams on which I participated and I perceived a concerted action by both Ronnie Newman, Michael Bourg, Rupert Wright and Bobby Jones and the students involved in athletics, instigated and led by Ronnie Newman, to harass and intimidate me.

. . . .

I was the subject of a letter to the editor written to the "Flour Bluff Sun" by Andie Blades, Ronnie Newman's secretary. This caused me a great deal of pain and mental anguish to see public display made of my school grades.

I believe that Coach Ronnie Newman, Rupert Wright, Michael Bourg and Bobby Jones at all times acted maliciously, in bad faith and with ill will towards me.

Paul Obersteller, Kurt's father, responded to interrogatories as follows:

[Several fellow students informed me that] my son was being locked inside the boys locker room by the coaching staff and being left unattended therein. This was not limited to just my son, as from the conversation with these young men, it was apparent that this was a standard disciplinary practice by many of the coaches. When I asked my son why he had not informed either his mother or myself, he stated that all the coaches warned him that if he ever came home again advising me of the treatment he was being subjected to at the school, he was "dead meat" and he would be out of athletics forever.

. . . .

The next incident ... occurred [when] ... Ronnie Newman entered the locker room ... and stated the following: "Ya'll [sic] fucking suck, all we've got on this team is a bunch of assholes." Then Newman looked directly at my son and said to everybody, "And if any of ya'll [sic] want to run home and tell your parent's I'll stand on top of the Empire State Building and say, you're God damn [sic] right that's what I said."

Paul Obersteller also highlights other events involving unfair treatment and intimidation of his son which he believes were instigated by Coach Newman.

While the Obersteller' statements do not conclusively establish their claims, the proof in this instance need only be sufficient to raise a fact issue; the evidence need not be sufficient to meet the burden of persuasion that the Obersteller would have at trial. *See Cloys v. Turbin*, 608 S.W.2d 697, 700 (Tex.Civ.App.—Dallas 1980, no writ). Since we must view the evidence in a light most favorable to the opposing party, we accept the statements of Kurt and Paul Obersteller as true.[2] We hold that Kurt Obersteller's controverting affidavit and Paul Obersteller's answers to interrogatories create a fact question as to whether Coach Newman acted within the scope of his employment.

Summary judgment was properly denied by the trial court. Coach Newman failed to conclusively establish all of the essential elements required for immunity under section 21.912(b) of the Texas Education Code.

We affirm the trial court's order denying summary judgment.

**2.** We would be inclined to consider Kurt Obersteller's statement about "malice" and "ill will" an impermissible legal conclusion if it was not also supported by details of events which togeth-er raise a fact issue regarding whether Coach Newman's actions were within the course and scope of his duties as an athletic director and coach.