Affirmed and Opinion filed February 7, 2006









Affirmed
and Opinion filed February 7, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00522-CV

____________

 

LINDA G. PHILLIPS,
M.D. AND PATRICK ADEGBOYEGA, M.D., Appellants

 

V.

 

DEBBIE DAFONTE, Appellee

 



 

On Appeal from the 56th
District Court

Galveston County, Texas

Trial Court Cause No. 04CV1207

 



 

O P I N I O N

Appellants, Linda G. Phillips, M.D., and
Patrick Adegboyega, M.D., appeal the trial court=s denial of their
motion to dismiss based on immunity under Texas Civil Practice and Remedies
Code section 101.106(f).  This
interlocutory appeal presents two central issues: (1) whether we have
jurisdiction to consider this appeal; and (2) whether the appellants satisfied
the requirements for dismissal under the statute. We hold that we have
jurisdiction to consider this appeal, and we affirm the trial court=s judgment.

Factual Background

The relevant facts are drawn from appellee
Debbie Dafonte=s petition.  Phillips and Adegboyega are medical doctors
who practice at The University of Texas Medical Branch at Galveston (AUTMB@).  Dafonte was Phillips= patient.  In October 2001, several years after Dafonte
had been diagnosed with cancer in her left breast and undergone a mastectomy,
Phillips performed reconstructive surgery on Dafonte=s breast.  During that surgery, a biopsy was taken of a
nodule in Dafonte=s right breast.  Adegboyega prepared a pathology report of
this biopsy that diagnosed Dafonte with ductal carcinoma in situ, an early form
of breast cancer.  According to Dafonte,
neither Phillips nor Adegboyega informed her of this biopsy or its results.  

Over the next several months, Dafonte
continued to be treated by Phillips at UTMB. In April 2002, during a routine
mammogram, three cysts were found in Dafonte=s right breast;
however, when she asked Phillips about them, Phillips did not disclose the
earlier biopsy, but instead Areassured@ Dafonte regarding
the cysts.

The following month, another biopsy
revealed Dafonte=s cancer, which had now progressed to a
point at which a modified radical mastectomy was recommended as the course of
treatment.  According to Dafonte, had the
cancer been reported to her earlier, she could have chosen a less invasive
treatment to remove it.  Dafonte chose
Phillips to perform the mastectomy and reconstructive surgery.  Dafonte alleges that, had she been told the
truth, she would not have selected Phillips to perform the surgery.

After several follow-up surgeries were
required, Dafonte requested her medical records.  It was only then, in 2004, that she learned
of the original cancer diagnosis.

In October 2004, Dafonte sued Phillips for
breach of fiduciary duty, fraudulent concealment, and negligence.  She also sued Adegboyega for negligence for
failing to convey the results of the biopsy of her right breast.  Dafonte sought damages for physical pain and
mental anguish, lost earnings, disfigurement, medical expenses, loss of
consortium, physical impairment, and attorney=s fees.








Phillips and Adegboyega (Athe doctors@) moved to dismiss
Phillips= lawsuit,
asserting that dismissal was mandatory under Texas Civil Practice and Remedies
Code section 101.106(f) of the Texas Tort Claims Act.  See Tex.
Civ. Prac. & Rem. Code 101.106(f).  
Section 101.106 is a part of the Texas Tort Claims Act.  See Tex.
Civ. Prac. & Rem. Code '' 101.001B.109 (the ATort Claims Act@).  Before Dafonte filed her lawsuit, section
101.106 was revised by the newly enacted House Bill 4, as part of the
Legislature=s tort reform efforts in 2003.  Under section 101.106(f), a suit filed
against an employee of a governmental unit based on conduct within the scope of
employment, which could have been brought Aunder this chapter@ against the
governmental unit, shall be dismissed on the employee=s motion unless
the plaintiff dismisses the employee and names the governmental unit as the
defendant.  See Tex. Civ. Prac. & Rem. Code ' 101.106(f).  The doctors contended that Dafonte alleged
claims against them in their official capacity and within the scope of their
employment, and supported their motion with affidavits in which they stated
they were salaried employees of UTMB and received their paychecks from the
State of Texas.  

On April 22, 2005, the trial court denied
the doctors= motion. 
This interlocutory appeal followed. 


I.        Dafonte=s Challenge to
Jurisdiction

Dafonte raises two problems she claims
undermine our jurisdiction over this appeal. 
Because we must have jurisdiction over the doctors= appeal to address
the substance of their issue, we begin with Dafonte=s jurisdictional
claims.

A.      This
Court Has Jurisdiction Over This Appeal.

Dafonte asserts we lack jurisdiction over
this appeal because: (1) section 101.106(f) is not an immunity statute that
renders the defendants immune from further action, but is merely procedural in
nature; and (2) the doctors filed the wrong type of pleading requesting their
dismissal from the suit.  We disagree on
both counts.








1.       Section
101.106 is an Immunity Statute.

We first dispose of Daftonte=s contention that
section 101.106(f) is not an immunity statute and is therefore merely
procedural rather than substantive. 
Section 101.106(f) provides as follows:

If a suit is filed
against an employee of a governmental unit based on conduct within the general
scope of that employee=s employment and if it could have been
brought under this chapter against the governmental unit, the suit is
considered to be against the employee in the employee=s official
capacity only.  On the employee=s motion, the suit
against the employee shall be dismissed unless the plaintiff files amended
pleadings dismissing the employee and naming the governmental unit as defendant
on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem.
Code ' 101.106(f).  Dafonte cites Villasan v. O=Rourke, relied upon by
the doctors, as recognizing that the provisions of section 101.106 together
create a Aprocedural right@ that may be
enforced by a motion to dismiss.  See
166 S.W.3d 752, 758 (Tex. App.CBeaumont 2005,
pet. filed).  








We agree the statute confers procedural
rights, but we do not agree that the statute is wholly procedural in
nature.  The procedural rights the
legislature granted also have a substantive impact.  In Newman v. Obersteller, the Texas
Supreme Court considered an earlier version of section 101.106, which provided
that a judgment in an action against a governmental unit Abars any action@ against an
employee.  See 960 S.W.2d 621, 622
(Tex. 1997).[1]  That version was included in a subchapter
entitled AProcedures,@ creating an
initial impression that the statute was procedural in nature.  See id. at 625 (Abbott, J.,
dissenting).  The court of appeals below
had interpreted the provision as a limitation and bar statute, rather than an
immunity statute.  Id. at
622.  Yet, the Court held it was an
immunity statute because it rendered the defendant immune from further action
in the matter, even though it did not use the word Aimmunity.@  Id. 
The Court also noted that its reasoning was consistent with the purpose
of the statutory provision allowing governmental employees an interlocutory
appeal from an adverse ruling on a claim of immunity, which is to Aprotect[] public
officials asserting an immunity defense from the litigation process.@  Id. 
Thus, the Newman court ultimately held that section 101.106 was
an immunity statute and the court of appeals erred by not exercising
jurisdiction over the governmental employee=s interlocutory
appeal.  Id. at 623.

Although the statutory language in Newman
differs from that before us, we nonetheless find the Court=s reasoning in Newman
equally applicable here.  Section
101.106(f) provides that, if a plaintiff=s suit against an
employee of a governmental unit meets certain requirements, it is Aconsidered to be
against the employee in the employee=s official
capacity only,@ and, if the plaintiff does not timely
amend the suit to dismiss the employee and name the governmental entity, the
suit must be dismissed on the employee=s motion.  See Tex.
Civ. Prac. & Rem. Code ' 101.106(f).  Effectively, this provision provides immunity
to the employee of a governmental unit by requiring either the substitution of
the governmental entity for the employee or the dismissal of a plaintiff=s suit when the
suit is based on conduct within the general scope of that employee=s employment and
could have been brought under the Tort Claims Act against the governmental
unit.  See id.  Relying on the reasoning of Newman, we
hold that when the statutory requirements of section 101.106(f) are met, the
statute confers immunity on an employee of a governmental entity.

2.       The
Denial of the Doctors= Motion to Dismiss
Based on Immunity May Be Appealed Under Civil Practice and Remedies Code
Section 51.014(a)(5).








Having determined that section 101.106(f)
is an immunity statute, we next consider Dafonte=s contention that
we lack jurisdiction because the doctors are appealing from the denial of a
motion to dismiss rather than from the denial of a motion for summary
judgment.  As we stated previously,
section 51.014(a)(5) authorizes an appeal from an interlocutory order of a
trial court[2]
denying Aa motion for
summary judgment that is based on an assertion of immunity by an . . .
employee of the State or a political subdivision of the State.@  Tex.
Civ. Prac. & Rem. Code ' 51.014(a)(5)
(emphasis added). 

We are mindful that we must strictly
construe statutes allegedly authorizing interlocutory appeals, and we may not
expand our jurisdiction beyond that conferred by the legislature.  See Xeller v. Locke, 37 S.W.3d 95, 100
(Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  However, in our opinion, the
legislature did not intend to limit the application of section 51.014(a)(5) to
a specific procedural vehicle; rather, the legislature was most interested in
the substance or topic of the motionCi.e., that it
declare the employee=s immunity because of his employment by
the State and that it attack the court=s jurisdiction to
hear the case.  Our conclusion is guided
by the reasoning of the Texas Supreme Court in Texas Department of Criminal
Justice v. Simons, 140 S.W.3d 338 (Tex. 2004), and by section 101.106 of
the Tort Claims Act.  

First we turn to Simons.  Although it involved section 51.014(a)(8) of
the Civil Practice and Remedies Code, it is instructional because section
51.014(a)(8) substantively is quite similar to section 51.014(a)(5).  Both sections provide for interlocutory
appeals when claims of immunity have been denied; that is their primary
purpose.  Section 51.014(a)(8) provides
interlocutory appeals to governmental entities, while section 51.014(a)(5)
gives the employees of these governmental entities an interlocutory appeal.  In addition, of the utmost importance to this
appeal, both sections grant an interlocutory appeal when a party has asserted
immunity via a specifically-mentioned procedural vehicle. In the case of
section 51.014(a)(8), the procedural vehicle mentioned is a plea to the
jurisdiction; section 51.014(a)(5) specifically mentions the filing of a motion
for summary judgment.








One question answered by the Simons
court is this:  when the Legislature
referred to a Aplea to the jurisdiction@ in section
51.014(a)(8) as the procedural vehicle by which immunity was raised, did it
mean to preclude an interlocutory appeal if the governmental entity used a
different procedural vehicle to raise immunity? 
The Simons court concluded that the Legislature did not intend
for section 51.014(a)(8) to limit the benefits of an interlocutory appeal only
to certain procedural vehicles.  Id.
at 349.[3]  Instead, the Court held, the substanceCor topicCof the pleading,
not the title of the pleading, is what mattered to the Legislature.  Id. 
Thus, if the governmental entity raised its immunity defense via a
motion for summary judgment, rather than by a plea to the jurisdiction as
specified in 51.014(a)(8), the governmental entity still would be entitled to
an interlocutory appeal, because the substance of the motion claimed
immunity.  Likewise, the Court held, if
the governmental entity filed a plea to the jurisdiction without raising a
jurisdictional issue, the governmental entity would not be entitled to an
interlocutory appeal merely because it filed a plea to the jurisdiction.  Id. 
The Simons court therefore instructs that A[o]nly when the
issue raised cannot implicate subject matter jurisdiction must the
interlocutory appeal be dismissed.@  Id.

Turning to section 51.014(a)(5), Simons
provides a clear answer.  The directive
is that substance, or the topic of the pleading, prevails over form, or the
title of the pleading.  Consequently, the
significant fact for determining if Phillips and Adegboyega are entitled to an
interlocutory appeal under section 51.014(a)(5) is that they alleged that they
were immune as employees of the State. 
By claiming immunity, they entitled themselves to an interlocutory
appeal.  That they raised immunity via a
motion to dismiss is inconsequential. 
Again, the substance, or the topic, of the pleading,  prevails over form, or the title of the
pleading.








Our interpretation also is consistent with
Section 101.106 of the Tort Claims Act. 
Unquestionably, that section is designed so that governmental employees
sued under the Tort Claims Act for actions taken within the scope of their job
will be dismissed as quickly as possible. 
It would undermine the purposes of 101.106 if an employee used the Awrong@ procedural
vehicle to raise an immunity defense, and then had to wait to appeal the court=s denial of the
defense until after he had to undergo the ordeal and expense of trial.  See Newman, 960 S.W.2d at 622.

In summary, we hold that the doctors are
entitled to an interlocutory appeal and therefore that we have jurisdiction to
consider this interlocutory appeal under Civil Practice and Remedies Code
section 51.014(a)(5).[4]  We next turn to the substance of the doctors= issue on appeal.

II.       The
Doctors Failed to Show that Dafonte=s Suit Could Have
Been Brought Under the Tort Claims Act.

The doctors contend the trial court erred
by denying their motion to dismiss because Dafonte essentially sued them in
their official capacity and refused to amend her suit to name UTMB as the sole
defendant as section 101.106(f) requires. 
Under section 101.106(f), A[i]f a suit is
filed against an employee of a governmental unit based on conduct within the
general scope of that employee=s employment and
if it could have been brought under this chapter against the governmental unit,
the suit is considered to be against the employee in the employee=s official
capacity only.@  Tex. Civ. Prac. & Rem. Code ' 101.106(f).  On the employee=s motion, Athe suit against
the employee shall be dismissed unless the plaintiff files amended pleadings
dismissing the employee and naming the governmental unit as defendant on or
before the 30th day after the date the motion is filed.@  Id. 
We hold that the doctors failed to demonstrate that Dafonte=s suit could have
been brought Aunder this chapter@ against UTMB, the
governmental unit employing them. 
Therefore, the doctors did not satisfy the statutory requirements and
the trial court did not err in denying their motion to dismiss.








As seen above, to be entitled to dismissal
under section 101.106(f), the doctors had to show that Dafonte=s suit (1) was
based on conduct within the general scope of the doctors= employment, and
(2) could have been brought Aunder this chapter@ against
UTMB.  See id.  In the trial court, the doctors focused on
the first prongCthat the suit was based on conduct within
the general scope of their employmentCby asserting that
they were members of the medical staff at UTMB, they were salaried employees of
UTMB, they received their paychecks from the State of Texas, and all of their
involvement in Dafonte=s medical care was within the scope of their
employment with UTMB.  

In response, Dafonte did not challenge the
doctors= evidence, but
instead asserted that they were not entitled to be dismissed because, for
various reasons, Dafonte could not bring her claims against UTMB under the Tort
Claims Act; in other words, the doctors did not show that her suit could have
been brought Aunder this chapter@ against
UTMB.  See id.  For the reasons stated below, we agree with
Dafonte.

The Tort Claims Act expressly waives
sovereign immunity in three general areas: (1) injury caused by an employee=s use of a motor‑driven
vehicle; (2) injury caused by a condition or use of tangible personal or real
property, and (3) injury caused by a premise defect.  See Tex.
Civ. Prac. & Rem. Code '' 101.021B.022(a); County
of Cameron v. Brown, 80 S.W.3d 549, 554 (Tex. 2002).  In their appellate reply brief, the doctors
acknowledge that the relevant provision to apply is the governmental unit=s liability for
injuries caused by a condition or use of tangible personal or real
property.  See Tex. Civ. Prac. & Rem. Code ' 101.021(2).  The doctors also acknowledge that Dafonte
characterizes her claims as a failure to communicate a diagnosis contained in
her medical records, and concede that information is not tangible property
under section 101.012(2) of the Tort Claims Act.  See Univ. of Tex. Med. Branch at Galveston
v. York, 871 S.W.2d 175, 179 (Tex. 1994) (holding that information does not
constitute tangible personal property under section 101.021(2) of Tort Claims
Act and that governmental immunity was not waived for negligence involving the
use, misuse, or nonuse of information in patient=s medical records).









Nevertheless, the doctors contend that the
trial court erred in determining that Dafonte alleged she was injured by the
use or misuse of tangible property for two reasons: (1) her petition included
an allegation that she required follow-up surgeries on the right breast as a
result of additional negligence;[5]
and, (2) she sued Adegboyega for preparing a report containing the diagnosis of
ductal carcinoma in situ, which was allegedly delivered to Phillips.  These allegations, the doctors urge, fall
within the general scope of the doctors= employment and
involve the use of property.








However, as discussed above, it is not
enough that a plaintiff=s allegation may be within the general
scope of the employee=s employment; the claim must also be one
that could have been brought under the Tort Claims Act against the governmental
unit.  See Tex. Civ. Prac. & Rem. Code ' 101.106(f).  The real substance of Dafonte=s petition against
the doctors is their intentional or negligent failure to communicate a
diagnosis to her.  This is also true
regarding Dafonte=s claim against Adegboyega, which is not,
as the doctors characterize it, a claim involving Athe preparation of
a report.@  In
her petition, Dafonte alleged that Adegboyega breached a duty to her Aby failing to
convey the results of the biopsy of Plaintiff=s right breast
nodule to those responsible@ for her
care.  Information about a medical
condition is not considered tangible property. 
See York, 871 S.W.2d at 179 (ASalcedo does not permit
claims against the State for misuse of information.@); Univ. of
Tex. Med. Branch at Galveston v. Mullins, 57 S.W.3d 653, 657 (Tex. App.CHouston [14th
Dist.] 2001, no pet.) (holding that patient=s claim that UTMB
failed to inform her that she had tested positive for HIV was not actionable
under the Tort Claims Act); Sawyer v. Texas Dep=t of Criminal
Justice, 983 S.W.2d 310, 312 (Tex. App.CHouston [1st
Dist.] 1998, pet. denied) (A[A] governmental
unit does not waive its sovereign immunity by using or misusing information.@); Thomas v.
Brown, 927 S.W.2d 122, 128 (Tex. App.CHouston [14th
Dist.] 1996, writ denied) (AIt is well
established that information and pronouncements, even when reduced to writing, are
not tangible personal property for purposes of the [Tort Claims] Act.@). 

Moreover, intentional torts, such as
breach of fiduciary duty, are not subject to the Tort Claims Act.  See Tex.
Civ. Prac. & Rem. Code ' 101.057(2)
(providing that Tort Claims Act does not apply to a claim Aarising out of
assault, battery, false imprisonment, or any other intentional tort . . . .@); Tex. Dep=t of Pub. Safety
v. Petta, 44 S.W.3d 575, 580 (Tex. 2001) (holding Tort Claims Act=s waiver of
sovereign immunity did not apply to plaintiff=s allegations of
intentional conduct by police officer); Univ. of Tex. Med. Branch at
Galveston v. Hohman, 6 S.W.3d 767, 777 (Tex. App.CHouston [1st
Dist.] 1999, pet. dism=d w.o.j.) (holding that UTMB, as a state
agency, could not be liable for the intentional torts of its employees); Alvarado
v. Heim, No. Civ.A.SA-04-CA0363XR, 2004 WL 2101925,*3 (W.D. Tex. Sept. 17,
2004) (holding police officer not entitled to dismissal of plaintiff=s excessive force
claims under section 101.106(f) because governmental unit is not liable for
intentional torts under Tort Claims Act); see also Moorhead v. East Chambers
Indep. Sch. Dist., No. 01-03-01234-CV, 2004 WL 1470787, *4 n.4 (Tex. App.CHouston [1st
Dist.] July 1, 2004, pet. denied) (not designated for publication) (AClaims for breach
of fiduciary duty do not fall under the Tort Claims Act.@).  Therefore, Dafonte=s breach of
fiduciary duty claim could not be brought against UTMB for the additional
reason that UTMB would not be liable for such a claim under the Tort Claims
Act.

We find that the doctors failed to
establish that Dafonte=s suit is one that could have been brought
against UTMB; therefore, we hold the trial court did not err in denying the
doctors= motion to
dismiss.  

 

 








Conclusion

In conclusion, we hold that we have
jurisdiction under Texas Civil Practice and Remedies Code section 51.014(a)(5)
to consider this interlocutory appeal of the trial court=s denial of the
doctors= motion to dismiss
on the ground of immunity under Texas Civil Practice and Remedies Code section
101.106(f).  We further hold that the
trial court did not err in refusing to dismiss Dafonte=s suit.  

The trial court=s judgment is
affirmed.

 

 

/s/      Wanda
McKee Fowler

Justice

 

 

Judgment
rendered and Opinion filed February 7, 2006.

Panel consists
of Justices Fowler, Edelman, and Guzman.











[1]  The earlier
version the Texas Supreme Court considered provided as follows: AA judgment in an action or settlement of a claim under
this chapter bars any action involving the same subject matter by the claimant
against the employee of the governmental unit whose act or omission gave rise
to the claim.@  See Newman,
960 S.W.2d at 622.





[2]  The statute
specifically references a district court, county court at law, or county court.





[3]  Governmental entities typically
file pleas to the jurisdiction to raise governmental immunity issues, so it was
logical for the Legislature to refer specifically to a plea to the
jurisdiction. 





[4]  Dafonte also
complains about the doctors= motion because she had no opportunity to conduct
discovery, and because the doctors set the hearing on the motion less than
twenty-one days after filing it.  In
light of our ultimate holding in this case, this claim is moot and we do not
address it.





[5]  The doctors
specifically point to the following allegation in Dafonte=s petition:

 

Moreover, the surgery on the right breast required
numerous follow-up operations which were the result of additional
negligence.  For example, Ms. Dafonte was
required to seek medical attention after the reconstruction because, among
other reasons, the implant was exposed.@

 

The doctors do not explain, however, how this
allegation alleges a use or condition of tangible property that caused Dafonte=s injuries.  See
Dallas County MHMR v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998) (stating
that, for immunity to be waived under section 101.1021(2), personal injury or
death must be caused by the condition or use of property and property does not
cause injury if it does no more than furnish the condition that makes the
injury possible).